CORLEY v. HOLLOWAY.

1. When a person has been shown to be alive at a certain period, the presumption is that he continued to live for at least seven years; but when he has been missing and has not been heard from during that period of time, then the presumption is the other way.

2. Whether the death of a person not heard from for seven years occurred at the beginning or end of that period is a matter to be determined upon the facts and circumstances of each particular case, the burden of proof being upon him whose interest it is to fix the death prior to the expiration of the seven years.

3. *Naisor* v. *Brockaway, Rich. Eq. Cas.*, 449, disapproved.

4. The decision of the Circuit judge that the person here not heard from in seven years did not die at the beginning of that period, was a finding of fact in a chancery case, and is approved.

5. Where the Circuit judge, in reaching his conclusions did not consider certain testimony admitted by the master, this court declined to pass upon its competency.

6. A tenant-in-common cannot be called upon by a co-tenant to pay rent during the time of occupancy before action brought, it not appearing that the occupant cultivated more than her share, and all the owners, including plaintiff, having permitted her to use the land.

Before Cothran, J., Edgefield, June, 1884.

The opinion states the case. The Circuit decree, after stating the facts, continued as follows:

The main question involved in the case, growing out of the foregoing statement of facts, is an exceedingly nice one, and I have to regret that the extraordinary pressure upon my time forbids much more than a statement of the conclusions attained. At the hearing, the famous case of *Pell* v. *Ball*, first reported in *Cheves Equity*, was constantly in my mind, and I looked forward with pleasure to the preparation of this decree, which I now find must be so hastily and perfunctorily done.

I assume at the outset, as a well settled proposition of law, that as the plaintiff's claim here depends upon the death of Henry W. before the demise of their child in January, 1865, which she affirms, that the burden of proof is upon her to establish this as a fact, in order that she may acquire the enlarged inheritance. It may with equal confidence be assumed as settled law that when one is proven to have been alive at a particular time, the presumption in favor of continued existence holds until broken down by proof of death or of seven years of absence and unheard of. It is not enough to show that the absent party was exposed to great danger, nor even in battle when thousands perished. For the

fact is even more notorious now than when the ill-fated Pulaski foundered at sea, that in the most desperate engagements thousands survive the casualties of battle. Some are killed, more are wounded, and still more survive as captured or as vanquished.

The testimony of Captain Holloway and of Rufus Harling, so full and so singularly perspicuous upon this point, is not only insufficient to break down the legal presumption of continued life, but it goes, I might venture to say, to the extent of proving satisfactorily the affirmative proposition that Henry W. was captured at Deep Bottom; and it being contrary to the usages of civilized warfare to take the lives of prisoners, the negative proposition, that he was not killed, is inferentially proven. Captain Holloway says, substantially, that the first advance of the brigade was made through a corn-field, under a scattering fire, the alignment was broken, and a halt was made at the fence to rectify it. Here Pick Holloway was wounded, and Henry W. was ordered to take him to the rear. The charge was renewed through an old field for 100 or 150 yards, and the line becoming again deranged, was halted and reformed in a ravine. Captain H. was wounded then and went to the rear. In the meantime, or soon afterwards, Henry W. regained his place in ranks. Rufus Harling concurs in this description of the situation, and takes up the thread at the ravine from which Captain H. had retired wounded, and says that he and Henry were together some thirty paces in advance of the main line; that they could not see the enemy from the ravine, and that he and Henry ascended the hill beyond, so that they might see and shoot them. The firing had ceased, and whilst upon this eminence, on looking to his right, he discovered that our people had retreated, and he saw the enemy advancing upon his right and in rear of him. He called Henry's attention to this, and hastily retreated, leaving Henry there. He crossed back over the ravine and ran the gauntlet of the approaching Federals; was called to by them to halt and was fired at, but escaped unhurt. He saw no more of Henry, who was left on the other side of the ravine and in a place of comparative safety. He further says that he retreated as rapidly as possible, and knows that if he had not done so, he would have been captured. He saw no effort made by Henry to escape. There was no

firing, he thinks, beyond the ravine, directly at Henry and himself.

In view of all this and more, I am unable to resist the conclusion that the proof fails to establish the proposition that Henry W. was killed at Deep Bottom. The master has reported in the testimony sent up proof of a very extraordinary incident, to which the plaintiff, by her counsel, duly objected. I am inclined to believe that the testimony referred to is competent, but as it is doubtful in its character, as being obnoxious to the rule as to hearsay evidence, I have attained a conclusion without its aid. I shall, nevertheless, reproduce it here in the very words of the witness, as a curious incident, having the verisimilitude of truth itself and as confirming the conclusion already attained. Greenleaf says : "All rules of evidence are adopted for practical purposes in the administration of justice, and must be so applied as to promote the ends for which they were designed." §§ 83, 348.

W. V. Corley, sworn, says: That he belonged to same company that H. W. Holloway did. Witness was a teamster. Question : Where, when, and what did you hear of H. W. Holloway after the battle of Deep Bottom ? Answer : Witness had been out after some forage, between Petersburg and Richmond, in March, 1865. On witness's return, a man belonging to the 14th or 24th North Carolina regiment came up with witness, and noticing the regiment and brigade on the wagon sheet to which witness belonged, said to witness : "Do you know a man by the name of Henry Holloway belonging to that regiment ?" (1st South Carolina). Witness told him yes, that he belonged to the company witness belonged to. To which he replied : "Do you know anything of Henry Holloway now ?" Witness replied : "No, I do not; he was taken missing at the battle of Deep Bottom." And asked him : "How do you know anything of Henry Holloway ?" He replied : "We were in prison together, and he told me that he had a brother in that company by the name of Pickens Holloway ; that he (the North Carolinian) had been exchanged, and that Henry came within three or four numbers of being exchanged also ; that he had just been exchanged, and was then on his way to his command." As soon as witness got back to headquarters of wagon team, he got permission from the quar-

termaster and went to Captain Holloway and reported to him what he had heard as stated concerning Henry Holloway. The whole company was under the opinion that Henry had been captured; the battle-field had been searched and he had not been found. Captain Holloway, upon being recalled, stated that W. V. Corley did report to him the information he had received about Henry as stated in his testimony.

As to the rents: It appears from the testimony that the children all agreed that their mother should be allowed to live upon the land—the old homestead—as long as she pleased to do so, and without any accountability for rent. In this arrangement the plaintiff, although not actively participating, was consulted, and said that she would not be contrary about it. This was equivalent to assent, and certainly barred her until demand for rents was made, which was on August 29, 1883, the day that this suit was begun. The plaintiff is not entitled to interest.

It is therefore ordered, adjudged, and decreed as follows: 1. That the writ of partition be issued according to law, for the purpose of making partition of the premises in question amongst the several parties in interest and according to their respective rights as herein adjudged, &c.

The plaintiff appealed upon exceptions alleging the following errors in the Circuit decree: 1. In decreeing that from the evidence and circumstances in the case, Henry W. Holloway was not killed at Deep Bottom on July 28, 1864, and therefore did survive his child by the plaintiff herein. 2. In not decreeing that the testimony of W. V. Corley was incompetent. 3. In decreeing that the plaintiff was not entitled to recover rents previous to August 29, 1883. 4. In not sustaining the exceptions of the plaintiff to the testimony of Capt. W. Holloway when called as a witness by the defendants to corroborate the evidence of W. V. Corley. 5. In not sustaining all of the exceptions by the plaintiff to the master's report.

*Mr. C. W. Creighton*, for appellant.

*Messrs. Sheppard Bros.*, contra.

March 23, 1885.   The opinion of the Court was delivered by

MR. JUSTICE McIVER.   Ransom Holloway, being seized and possessed of the land, which is the subject of contention in this case, departed this life intestate on May 14, 1862, leaving as his heirs at law his widow and eight children.   One of these children, Henry W. Holloway, intermarried with the plaintiff, who bore to him two children, one of whom died in September, 1862, and the other in January, 1865.   This is a proceeding for the partition of the said land, in which a claim is made that the widow of the intestate shall account for the rents and profits thereof, under the allegation that she has enjoyed the exclusive use of the land.   Henry W. Holloway was a soldier in the Confederate army and disappeared at the battle of Deep Bottom on July 28, 1864, and has not since been heard from.   The plaintiff claims that he was killed in that battle, and that his share of his father's estate, as well as his share of the estate of his two brothers, who died intestate after their father, one in May, 1862, and the other in May, 1864, descended to her as his widow and his child, and that by the subsequent death of the child in January, 1865, the whole interest became vested in her.   This claim is disputed by the defendants, who allege that there is no evidence sufficient to show that Henry W. Holloway predeceased his child, and hence that the plaintiff, as his widow, is only entitled to one-half of his estate, and his next of kin to the other half. They also dispute the claim for an account of the rents and profits from the widow.   The Circuit judge sustained the positions taken by the defendants and rendered judgment accordingly. From this judgment plaintiff appeals upon the various grounds set out in the "Case."

The main question in the case is whether Henry W. Holloway predeceased his child, who died in January, 1865, and this really turns upon the question whether the evidence shows that Henry W. Holloway was killed at the battle of Deep Bottom, on July 28, 1864.   There is no direct evidence of this fact, but the plaintiff claims that it must be inferred from the fact that he was then last seen, and has not been heard from since—a period much more than seven years.   The rule, as we understand it, is that

when a person has been shown to be alive at a certain period, the presumption is that he continued to live for at least seven years; but that when he has been missing, and has not been heard from during that period of time, then the presumption is the other way. But these are both mere presumptions of fact, capable of being rebutted by evidence of such facts or circumstances as will be sufficient to induce a different conclusion. From this follows another rule, that the burden of proof is upon him who undertakes to overthrow the presumption. For example, a party who claims that a certain individual was dead at a certain time, prior to the expiration of the period of seven years from the time when he was last heard from, must overcome the presumption of continuance of life, for that period of time, by evidence of such facts and circumstances as will be sufficient to rebut such presumption. But on the other hand, when a party claims that a certain person was alive after the expiration of seven years from the time when such person was last heard from, the burden of proof is upon him to show such facts and circumstances as will be sufficient to rebut the presumption of death arising from his being absent and not heard from for a period of seven years. This latter presumption, however, does not fix absolutely the time of the death, either at the end, or at the commencement, of the period of the seven years, but that is a matter to be determined by the facts and circumstances of each particular case. These principles are fully sustained by the elementary writers, as well as by our own cases. 2 *Stark. Evid.*, 457–8; 1 *Greenl. Evid.*, § 41; 2 *Ibid*, § 278*f*; *Chapman* v. *Cooper,* 5 *Rich.*, 452; *Canady* v. *George,* 6 *Rich. Eq.*, 103.

In *Godfrey* v. *Schmidt (Cheves. Eq.,* 57), the question whether a person absent and not heard from for a period of seven years, is to be presumed to have died at the commencement, or at the expiration, of that period, is left open, and authorities are cited both ways. The only case in this state, however, which is cited to sustain the doctrine that the presumption is that the death took place at the commencement of the seven years, is a Circuit decision of Harper, Ch., in *Naisor* v. *Brockaway, Rich. Eq. Cas.,* 449; while, on the other hand, the Court of Appeals in the case of *Craig* v. *Craig (Bail. Eq.,* 102) fixed the time of the death

at the expiration of the period of seven years. The view taken by Chancellor Harper, in his Circuit decision above cited, is evidently not sustained by the more recent cases, and is not sustained by reason. As is said by Wardlaw, J., in his separate opinion in *Chapman* v. *Cooper, supra,* in speaking of this question as to whether the time of the death is to be fixed at the beginning or the termination of the seven years: "To fix the time at the end of the seven years would be almost always contrary to the fact; to fix it at the beginning, immediately after the continuance of life had been positively ascertained, would be plainly contrary to truth and common-sense. Circumstances may enable a jury to say when it took place, or that it preceded a given event within the seven years. But there must be some circumstances to overcome the presumption that life continues for at least seven years; or if that presumption has been overcome by the lapse of the seven years, to fix at one period rather than another, the time of death left wholly uncertain; and these circumstances must be shown by the party whose interest it is to establish the time of death anterior to the expiration of the seven years."

Considering this case, then, in the light of these principles the question presented is really a question of fact, and under the well settled rule the conclusion reached by the Circuit judge must be sustained, unless it is without any testimony to sustain it, or is manifestly against the weight of the evidence. We not only do not think that this is the case, but we fully concur in the conclusion reached by Judge Cothran, and deem it scarcely necessary to attempt to add anything to what he has so well said. To sustain the claim of the plaintiff, it was necessary for her to show that Henry W. Holloway died prior to January, 1865, when her child died; and the burden of proof was upon her to show this fact. Practically she was bound to show, by the preponderance of the evidence, that her husband was killed in the battle of Deep Bottom; but, in our opinion, the testimony rather tends to show that he was captured, and not killed, in that battle. He had passed through the thickest of the fight unharmed, and when last seen he was at a place where there was but slight danger of his being killed by the bullets of the enemy, but where he was in

the greatest danger of being captured, and the natural inference would be that he was captured. If the testimony had been that, when last seen, he was going into battle where many were killed, there might have been good ground for the inference that he was killed. Such, however, is not the testimony; but, on the contrary, the testimony tends to show that when he was last seen the battle was practically over, or at least was not raging at the spot where he was seen alive and unharmed, and that the real danger to which he was exposed, was capture and not death. But we do not propose to discuss the testimony, being quite willing to adopt the view of it taken by the Circuit judge.

The next question raised by the grounds of appeal, is as to the competency of the testimony of W. V. Corley, in regard to his interview with a member of a North Carolina regiment on his return from prison, in which he learned that he and Henry W. Holloway had been in prison together, and as to the competency of Capt. Holloway's testimony, in which he stated that W. V. Corley had communicated the fact of such interview to him, upon his return to camp. Inasmuch as this testimony was not ruled competent by the Circuit judge, and as he says expressly that he did not consider it in reaching his conclusion, we do not see how it can afford any basis for a ground of appeal. Whether the testimony was competent or incompetent (about which we do not wish to be understood as intimating any opinion), is wholly immaterial, for practically the judge did rule it out.

The only remaining inquiry is as to the claim for rents and profits. It is quite clear that this claim cannot be allowed. In the first place, it does not appear satisfactorily that the widow cultivated more than her share of the land, and, in the second place, the testimony shows that she used the land by the permission and acquiescence of all the heirs, including the plaintiff, and this alone would be sufficient to exclude her claim for rents prior to demand, which was not made until this action was commenced; and that she has been allowed.

The judgment of this court is that the judgment of the Circuit Court be affirmed.